1  JEFFREY V. DUNN, Bar No. 131926
   jeffrey.dunn@bbklaw.com
2  CARLOS L. CAMPOS, Bar No. 222900
   carlos.campos@bbklaw.com
3  DANIEL L. RICHARDS, Bar No. 315552
   daniel.richards@bbklaw.com
4  BEST BEST & KRIEGER LLP
   18101 Von Karman Avenue
5  Suite 1000
   Irvine, CA 92612
6  Telephone: (949) 263-2600
   Facsimile: (949) 260-0972
7
   Attorneys for Defendant
8  City of Colton

9              UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11 BEN EILENBERG,                    Case No. 8:20-cv-00767-FMO-DFM

12            Plaintiff,             **MOTION FOR JUDGMENT ON THE
                                     PLEADINGS**
13       v.
                                     [*Filed concurrently with Declaration of
14 THE CITY OF COLTON; THE           Daniel L. Richards and Request for
   COUNTY OF SAN BERNARDINO;         Judicial Notice*]
15 THE STATE OF CALIFORNIA;
   and DOES 1 through 50, inclusive, **DATE:**   FEBRUARY 23, 2021
16                                   **TIME:**   10:00 am
            Defendants.             **CRTRM:** 6B
17

18

19

20

21

22

23

24

25

26

27

28

23152.04327/33419557.1

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ..........................................................................................6

II.    FACTUAL BACKGROUND .......................................................................7

       B.     Procedural History ..................................................................9

III.   LEGAL ARGUMENT .............................................................................11

       A.     Legal Standard ......................................................................11

       B.     Plaintiff Lacks Standing........................................................12

              1.     Plaintiff has not suffered an Injury in Fact.............12

              2.     Any Injury is Not Traceable to the City ..................14

              3.     Any Injury Is Not Redressable By an Order Against the City....................................................................15

              4.     Plaintiff's Claim is Moot.........................................15

       C.     The First Count Under 42 U.S.C. § 1983 Fails..................16

              1.     Plaintiff's Constitutional Challenge to the Executive Order Fails to State a Claim ....................17

              2.     Plaintiff's Statutory Challenge to the Executive Order Fails to State a Claim....................................19

              3.     Plaintiff's Challenge to California Election Law Fails to State a Claim................................................20

       D.     Plaintiff's Second Count for Declaratory Relief Fails........25

       E.     Plaintiff's Petition for Writ of Mandate Fails to State a Claim ..........26

IV.    CONCLUSION ...........................................................................................27

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*In re Abbot*
  954 F.3d 772 (5th Cir. 2020) ........................................................................ 17, 18

*Altman v. County of Santa Clara*
  2020 WL 2850291 (N.D. Cal., June 2, 2020) ...................................................... 17

*Am. States Ins. Co. v. Kearns*
  15 F.3d 142 (9th Cir. 1994) ....................................................................................... 25

*Americopters LLC v. Fed. Aviation Admin.*
  441 F.3d 726 (9th Cir. 2006) ..................................................................................... 11

*Anderson v. Celebrezze*
  460 U.S. 780 (1983) ..................................................................................................... 21

*Angle v. Miller*
  673 F.3d 1122 (9th Cir. 2012) ..........................................................................*passim*

*Arizona Libertarian Party v. Hobbs*
  925 F.3d 1085 (9th Cir. 2019) .................................................................................. 21

*Arizonans for Fair Elections v. Hobbs*
  2020 WL 1905747 (D. Ariz., Apr. 17, 2020) ...............................20, 22, 23, 24

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ...................................................................................................... 11

*Bates v. United Parcel Serv.*
  511 F.3d 974 (9th Cir. 2007) ..................................................................................... 12

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) ...................................................................................................... 11

*Burdick v. Takushi*
  504 U.S. 428 (1992) ...................................................................................................... 21

*Compagnie Francaise de Navigation a Vapeur v. Bd. of Health of State of La.*
  186 U.S. 380 (1902) ...................................................................................................... 17

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CA 92612

23152.04327/33419557.1

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Cook v. Brewer*
637 F.3d 1002 (9th Cir. 2011) ..................................................................... 11

*Duran v. City of Corpus Christi*
240 F. App'x. 639 (5th Cir. 2007) ............................................................... 13

*Dworkin v. Hustler Magazine, Inc.*
867 F.2d 1188 (9th Cir. 1989) ..................................................................... 11

*Fight for Nevada v. Cegavaske*
2020 WL 2614624 (D. Nev., May 15, 2020) ............................... 20, 21, 22, 23

*Fleming v. Pickard*
581 F.3d 922 (9th Cir. 2009) ....................................................................... 11

*Friends of the Earth v. Laidlaw Envtl. Servs.*
528 U.S. 167 (2000) ..................................................................................... 14

*Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*
896 F.2d 1542 (9th Cir. 1989) ..................................................................... 11

*Hollingsworth v. Perry*
570 U.S. 693 (2013) ............................................................................... 13, 14

*Holtz v. Rockefeller & Co.*
258 F.3d 62 (2d Cir. 2001) ............................................................................ 9

*Jacobson v. Massachusetts*
197 U.S. 11 (1905) ................................................................................. 17, 18

*Johnson v. Riverside Healthcare Sys., LP*
534 F.3d 1116 (9th Cir. 2008) ..................................................................... 11

*Lujan v. Defenders of Wildlife*
504 U.S. 555 (1992) ............................................................................... 13, 15

*McCarthy v. United States*
850 F.2d 558 (9th Cir. 1988) ....................................................................... 12

*MedImmune, Inc. v. Genentech, Inc.*
549 U.S. 118 (2007) ..................................................................................... 25

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CA 92612

23152.04327\33419557.1

**TABLE OF AUTHORITIES**
(continued)

Page

*Newdow v. Roberts*
  603 F.3d 1002 (D.C. Cir. 2010) .......................................................................... 15

*Pagan v. Calderon*
  448 F.3d 16 (1st Cir. 2006) .................................................................................. 14

*Prete v. Bradbury*
  438 F.3d 949 (9th Cir. 2006) ............................................................................... 23

*Purcell v. Gonzalez*
  549 U.S. 1 (2006) ................................................................................................. 24

*Rubin v. City of Santa Monica*
  308 F.3d 1008 (9th Cir. 2002) ............................................................................. 16

*S. Bay United Pentecostal Church v. Newsom*
  No. 19A1044, 590 U.S. --- 2020 WL 2813056 (May 29, 2020) (Roberts, C.J.,
  concurring).................................................................................................... 17, 18

*Schaefer v. Townsend*
  215 F.3d 1031 (9th Cir. 2000) ............................................................................. 16

*Smith v. McCullough*
  270 U.S. 456 (1926) ............................................................................................. 12

*Spokeo, Inc. v. Robins*
  136 S. Ct. 1540 (2016) .................................................................................... 12, 13

*Thomas v. Anchorage Equal Rights Com'n*
  220 F.3d 1134 (9th Cir. 2000) ............................................................................. 13

*Timmons v. Twin Cities Area New Party*
  520 U.S. 351 (1997) ............................................................................................. 24

*Tosco Corp. v. Communities for a Better Env't*
  236 F.3d 495 (9th Cir. 2001) (abrogated in part on other grounds by *Hertz Corp.
  v. Friend,* 559 U.S. 77 (2010)) ........................................................................... 12

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*
  454 U.S. 464 (1982) ............................................................................................. 12

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CA 92612

- 4 -

1
2

## TABLE OF AUTHORITIES
### (continued)

**Page**

3
4
*Wendy Gish v. Gavin Newsom*
    2020 WL 1979970 ........................................................................... 18

5
6
*White v. Lee*
    227 F.3d 1214 (9th Cir. 2000) ...................................................... 12

7
8
*Yes on Prop B v. City and County of San Francisco*
    2020 WL 6158096 (9th Cir., Oct. 21, 2020) ............................... 16

9
**State Cases**

10
11
*Costa v. Superior Court*
    37 Cal.4th 986 (2006) .................................................................. 25

12
13
*People v. Picklesimer*
    48 Cal.4th 330 (2010) .................................................................. 26

14
*Santa Clara County Counsel Attys. Assn. v. Woodside*
    7 Cal.4th 525 (1994) .................................................................... 26

15
16
**Federal Statutes**

17
28 U.S.C. § 2201 ............................................................................... 25

18
**State Statutes**

19
Cal. Code Civ. Proc., § 1085, subd.(a) ........................................... 26

20
Cal. Code Civ. Proc. § 1086 ............................................................ 26

21
22
Cal. Elec. Code § 320 ...................................................................... 19

23
Cal. Elec. Code § 9032 .................................................................... 14

24
Cal. Elec. Code §§ 9607–9609 ........................................................ 13

25
**Rules**

26
Fed. R. Civ. P. 12(b) ....................................................................... 11

27
Fed. R. Civ. P. 12(c) ....................................................................... 11

28

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CA 92612

OPPOSITION TO PLAINTIFF'S APPLICATION
FOR PRELIMINARY INJUNCTION
Case No.: 8:20-cv-00767

23152.04327/33419557.1

1     PLEASE TAKE NOTICE THAT on February 23, 2021, at 10:00 a.m., or as

2    soon thereafter as the matter may be heard, before the Honorable Douglas F.

3    McCormick in Courtroom 6B, 6th Floor of the United States District Court for the

4    Central District of California, located at 350 W. 1st Street, Los Angeles, CA 90012,

5    Defendant City of Colton will and hereby does move this Court to dismiss Plaintiff

6    Ben Eilenberg's First Amended Complaint (FAC) and all claims therein, pursuant to

7    rule 12(c) of the Federal Rules of Civil Procedure.

8     This motion is made on the grounds that under Federal Rule of Civil

9    Procedure rule 12(c), the City is entitled to judgment on the pleadings because:

10     Plaintiff fails to allege facts to show the "irreducible constitutional minimum"

11    of standing, in particular that: (1) the plaintiff suffered a concrete injury in fact, (2)

12    the injury is fairly traceable to the challenged conduct, and (3) the injury is likely to

13    be redressed by a favorable decision;

14     Plaintiff's claims are moot, because the public general election that is the

15    object of Plaintiff's claims occurred on November 3, 2020; and

16     Plaintiff fails to state a claim on which relief can be granted in any of

17    Plaintiff's Counts.

18     This motion is made following multiple good-faith attempts by  counsel for

19    the City of Colton to arrange a conference of counsel pursuant to L.R. 7-3. As

20    described in the concurrently submitted declaration of Daniel L. Richards, counsel

21    for the City of Colton has attempted to contact Ben Eilenberg multiple times, but

22    these attempts have been ignored. (Declaration of Daniel L. Richards at ¶¶ 6–10.)

23    **I.    <u>INTRODUCTION</u>**

24     Plaintiff's First Amended Complaint should be dismissed without leave to

25    amend as to Defendant City of Colton ("City"). Plaintiff's complaint, and each

26    count in it, are barred by insuperable defects that cannot be cured by any

27    amendment.

28     First, Plaintiff's claims are non-justiciable. Plaintiff has no Article III standing

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CA 92612

because he is only an agent of the initiative proponent and he therefore has not shown the standing requirement of injury-in-fact, or any of the other components of standing.

Second, Plaintiff's claims are moot. The gravamen of the relief sought by Plaintiff is an order allowing a food truck related initiative to be placed on the November, 2020 ballot. The November, 2020 election has already occurred, and Plaintiff cannot obtain the relief he seeks.

Third, Plaintiff has failed to state a claim upon which relief can be granted. The First Amended Complaint alleges three counts. For Plaintiff to prevail on his constitutional challenge in the first count, Plaintiff must show either that "reasonably diligent efforts" were made to qualify the initiative or that section 9208 of the California Elections Code does not further an important regulatory interest. *Angle v. Miller*, 673 F.3d 1122, 1132 (9th Cir. 2012). But Plaintiff has failed to allege facts that would support either showing. Plaintiff's second count for declaratory relief fails because Plaintiff has alleged no facts showing any actual controversy between himself and the City. Finally, Plaintiff's third count for writ of mandate fails because Plaintiff has identified no ministerial duty whose performance this Court may order in a writ of mandate, and because the requested relief is impossible or moot since the November 2020 election has occurred.

## II.    FACTUAL BACKGROUND

To prepare for and respond to suspected or confirmed cases of COVID-19 in California, the Governor proclaimed a State of Emergency in California on March 4, 2020. *See* Request for Judicial Notice ("RJN") No. 1 & Ex. 1. This proclamation made additional State of California resources available, formalized emergency actions, and helped California prepare for the spread of COVID-19. *Id.*

On March 19, 2020, the Governor issued Executive Order N-33-20. RJN No. 2 & Ex. 2. Executive Order N-33-20 directed all California residents to heed the State public health directives, which the Executive Order expressly incorporated in

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CA 92612

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CA 92612

the form of the March 19, 2020 Order of the State Public Health Officer ("Public Health Order"). *Id.* The Public Health Order requires "all individuals living in the State of California to stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors, as outlined at https://www.cisa.gov/identifying-critical-infrastructure-during-covid-19." *Id.* Observing that "[t]he federal government has identified 16 critical infrastructure sectors," the order provides that "Californians working in these 16 critical infrastructure sectors may continue their work because of the importance of these sectors to Californians' health and wellbeing." *Id.*

The Executive Order further provides that the Public Health Officer "may designate additional sectors as critical in order to protect the health and well-being of all Californians." *Id.* On March 22, 2020, the Public Health Officer designated a list of "Essential Critical Infrastructure Workers." RJN No. 3 & Ex. 3. Included in that list is "elections personnel." *Id.* at p. 45.

In April 2020, the County of San Bernardino issued similar "stay-at-home" orders that prohibit non-essential public gatherings. RJN No. 4 & Ex. 4.

A. **The Initiative and Present Lawsuit**

On November 7, 2019, initiative proponent Ramona Padilla submitted a proposed "food truck initiative" to the City of Colton, and requested that the City Attorney prepare a ballot title and summary. Dkt. No. 18-1 at pp. 23–26. With the submitted initiative, the City Clerk and Elections Official for the City of Colton, Carolina R. Padilla, included a letter of authorization authorizing Ben Eilenberg as her agent to act on her behalf. *Id.* at p. 22.

On November 21, 2019, Ms. Padilla, transmitted the City Attorney ballot title and summary of the initiative to Mr. Eilenberg. In this transmittal, Ms. Padilla reminded Mr. Eilenberg that "your clients will have until Tuesday, May 19, 2020 to secure the required signatures." Dkt. No. 18-2 at p. 1.

On March 23, 2020, Eilenberg wrote to the City and requested that the City

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CA 92612

"simply mov[e] the initiative[] onto the ballot" due to the Governor's executive order. Dkt. No. 18-3. On March 25, 2020, City Clerk Carolina Padilla responded and indicated that the City would not place the initiative directly on the ballot, and noted that "as a general law city, Colton is subject to the California Elections Code and is not free to craft alternative procedures. . . ." Dkt. No. 18-4 at p. 2.

From March 27, 2020 to April 2, 2020, Mr. Eilenberg sent a series of emails to the City requesting that the City provide "written confirmation that our signature gatherers may go door-to-door. . . ." Dkt. No. 18-5 at p. 2; *see also id.* at p. 4.

On April 2, 2020, Ms. Padilla responded and indicated that the City did not interpret the Health Officer's designation for "elections personnel" to apply to "paid circulators going door-to-door." Rather, as Ms. Padilla indicated, the City understood that designation to apply to "government personnel responsible for conducting schedule elections as part of their job (i.e., City Clerks and County Elections Officials)." Dkt. No. 18-6 at p. 2. As Ms. Padilla summarized: "We understood the food truck initiative is very important to the proponents. However, it does not meet the definition of 'essential' based on the Governor's [Executive] Order and the City does not have discretion to vary from this Order." *Id.*

Ms. Padilla concluded that the City would not issue the requested "essential workers" letter, and indicated that signature gatherers should follow the Governor's Order pending further guidance from federal, state, or county authorities. *Id.* at p. 3.

## B.   <u>Procedural History</u>

Plaintiff[1] filed this lawsuit on April 20, 2020, and filed an *ex parte* application for a temporary restraining order ("TRO") on April 29, 2020. Dkt. Nos.

---

[1] While Plaintiff represents himself pro se, as a suspended attorney he is not entitled to liberal construction of his pleadings. *See, e.g., Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82 n.4 (2d Cir. 2001) ("[P]ro se attorneys typically cannot claim the special consideration which the courts customarily grant to pro se parties.") (Internal citations omitted).

1, 10. The City filed an opposition on April 30, 2020. Dkt. Nos. 12, 15.

On May 14, 2020, the Court denied Plaintiff's application for a temporary restraining order, concluding that Plaintiff failed to show grounds for ex parte relief (Dkt. No. 16 at pp 4–5); Plaintiff may lack standing (*id.* at pp. 5–6); Plaintiff is unlikely to succeed on the merits of his claims (*id.* at pp. 7–8); Plaintiff failed to show irreparable injury (*id.* at pp. 8–9); that the balance of hardships weighed against granting a TRO (*id.* at pp. 9–10); and that the public interest weighed against granting a TRO. *Id.* at pp. 10–11.

On June 4, 2020, Plaintiff filed a first amended complaint, and a motion for preliminary injunction. (Dkt. Nos. 18, 19.) The State of California and the City opposed the motion.

On July 29, 2020, United States Magistrate Judge Douglas F. McCormick issued a Report and Recommendation recommending denial of the motion, and that Report and Recommendation was accepted and the motion was denied on July 29, 2020. (Dkt. Nos 36, 40.)

As the Report and Recommendation concluded, Plaintiff's First Amended Complaint still fails to show that Plaintiff has standing, and Plaintiff is unlikely to succeed on the merits of his claim. (Dkt. 36 at pp. 5–12.)

On July 15, 2020, the State of California filed a motion to dismiss, and that motion was granted on October 13, 2020.  (Dkt. Nos 38, 45, 47.)

On October 9, 2020, this Court issued an Order to Show Cause, ordering Plaintiff to serve the County of San Bernardino, or show cause why Plaintiff has not served the County of San Bernardino. (Dkt. No. 46.) Plaintiff thereafter failed to file proof that the County of San Bernardino had been served or show good cause why Plaintiff had failed to serve the County, and on November 24, 2020, a Report and Recommendation was issued recommending dismissal of Plaintiff's claims against the County of San Bernardino. (Dkt. No. 50.)

On November 3, 2020, a general election was held in the State of California.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CA 92612

RJN No. 5.

### III.   **LEGAL ARGUMENT**

####   A.   **Legal Standard**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989). The court must accept all factual allegations in the complaint as true, and construe them in the light most favorable to the non-moving party. *See Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). "[T]he same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog[,]" because the motions are "functionally identical[.]" *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).

As with a Rule 12(b) motion to dismiss, a Rule 12(c) motion should be granted if the plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011).

A motion to dismiss based on a failure to state a claim on which relief can be granted tests the legal sufficiency of the complaint. A motion to dismiss can "be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008)  (internal quotation omitted).

In reviewing a motion to dismiss based on subject matter jurisdiction, "the district court is not confined by the facts contained in the four corners of the complaint—it may consider facts and need not assume the truthfulness of the complaint." *Americopters LLC v. Fed. Aviation Admin*., 441 F.3d 726, 732 n.4 (9th

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CA 92612

Cir. 2006). The court "need not presume the truthfulness of the plaintiffs' allegations" and may "resolve factual disputes concerning the existence of jurisdiction." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). The plaintiff has the burden of proving that jurisdiction exists. *See Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001) (abrogated in part on other grounds by *Hertz Corp. v. Friend,* 559 U.S. 77 (2010)); *see also Smith v. McCullough,* 270 U.S. 456, 459 (1926) ("A plaintiff suing in a federal court must show in his pleading, affirmatively and distinctly, the existence of whatever is essential to federal jurisdiction, and, if he does not do so, the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by amendment.").

### B.   Plaintiff Lacks Standing

Plaintiff's claims should be dismissed because this Court lacks Article III jurisdiction over the claim against the City because Plaintiff lacks standing.

Article III of the U.S. Constitution confines the jurisdiction of federal courts "to the resolution of cases and controversies." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 471 (1982) (internal quotation omitted). The "irreducible constitutional minimum" of standing requires a showing that: (1) the plaintiff suffered a concrete injury in fact, (2) the injury is fairly traceable to the challenged conduct, and (3) the injury is likely to be redressed by a favorable decision. *Bates v. United Parcel Serv*., 511 F.3d 974, 985 (9th Cir. 2007).

#### 1.   Plaintiff has not suffered an Injury in Fact

Plaintiff has failed to allege that he has suffered any injury in fact. Injury in fact is the "[f]irst and foremost" of standing's three elements. *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547 (2016). To establish injury in fact, a plaintiff must show that he suffered "an invasion of a legally protected interest" that is "concrete

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CA 92612

MOTION FOR JUDGMENT ON THE
PLEADINGS
Case No.: 8:20-cv-00767

and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). Additionally, "[c]ourts generally refuse to recognize standing based on economic harm that is merely a consequence of an injury suffered by another party." *Duran v. City of Corpus Christi*, 240 F. App'x. 639, 641–42 (5th Cir. 2007).

Here, Plaintiff does not allege that he has suffered any harm. He does not allege that he has been subject to arrest or citation for violation of the Governor's executive order, nor does he allege that any of his signature gatherers have violated the order and suffered any adverse effects. *See Thomas v. Anchorage Equal Rights Com'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) ("We have held that neither the mere existence of a proscriptive statute nor a generalized threat of prosecution satisfies the 'case or controversy' requirement.") (internal citations and quotations omitted).

Further, Plaintiff does not allege any personal, concrete interest in the success of the signature gathering effort. He does not allege that he operates a food truck enterprise that stands to benefit from the proposed initiative. Plaintiff fails to specify what, if any, harm he has or will suffer to his properties, or what economic loss he faces. Plaintiff does not allege that he has personally paid any signature gatherers. *See* Dkt. No. 18 at ¶¶ 2–3, 15–29.

Nor does Plaintiff allege that he is the proponent of the initiative. (Dkt. No. 18 at ¶ 3.) The U.S. Supreme Court has recognized that ballot initiative proponents have a "unique" role in California's initiative process, for purposes of Article III standing. *Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013). This "unique" stake in the qualification of an initiative differentiates initiative proponents "from other supporters of the measure." *Id.* "[W]hen it comes to the process of enacting" a ballot initiative in California, "the official 'proponents'" of that initiative are alone "responsible for collecting the signatures required to qualify the measure for the ballot." *Id.* (citing Cal. Elec. Code §§ 9607–9609). Likewise, only the official proponent has "the right to file the measure with elections officials to put it on the

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CA 92612

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CA 92612

ballot." *Id.* at 707 (citing Cal. Elec. Code § 9032). For purposes of Article III standing, only the proponent of a ballot initiative in California has a concrete, personal stake in the qualification of that initiative.

Factually, Plaintiff is not the proponent of the ballot measure, Ramona Padilla is. (Dkt. No. 18-1 at p. 22.) She uses Eilenberg as her agent. (*Id.*) "It is not enough for the agent to allege an injury that is qualitatively different from that suffered by the principal; rather, the agent must allege an injury that does not derive from an injury to the principal." *Pagan v. Calderon*, 448 F.3d 16, 30 (1st Cir. 2006). Plaintiff's alleged injuries, if any, are derivative of the harm ascribed to Ms. Padilla.

Tellingly, despite this Court's repeated indications that Plaintiff lacks standing (See Dkt. Nos. 16 at pp. 5–6; 36 at pp. 5–7; 40), Plaintiff failed to allege any additional facts in his amended complaint tending to show that he suffered any harm. The operative allegations relating to standing in the original complaint and the first amended complaint are identical. (*Compare* Dkt. No. 1 at ¶ 1 ("Plaintiff is managing an initiative that is planned to be on the November 2020 ballot for the City of Colton, CA."); ¶ 3 ("Plaintiff Ben Eilenberg is managing the initiative campaign for the initiative entitled  . . .") *with* Dkt. No. 18 at ¶¶ 1, 3 (same)). Plaintiff had the opportunity to allege and prove further facts demonstrating standing, and failed to do so.

## 2. **Any Injury is Not Traceable to the City**

Plaintiff must show that his injury is "fairly traceable to the challenged action of the defendant." *Friends of the Earth v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180–81 (2000).  If any person's constitutional rights associated with the initiative process are impinged upon, this is the result of COVID-19, the Governor's executive order, the County's "safer at home" order, and generally applicable California election law.

Plaintiff has failed to join either the Governor of California or any other state

1    official charged with implementing the Governor's executive order or state election.

2    Plaintiff initially joined the State of California, but the state was dismissed with

3    prejudice on October 13, 2020. (Dkt. No. 47.)

4        Similarly, Plaintiff attempted to join the County of San Bernardino, but due

5    to Plaintiff's failure to serve the County the County will likely be dismissed before

6    this motion is heard.

7        **3.    Any Injury Is Not Redressable By an Order Against the City**

8        To satisfy the redressability requirement, a court must find that it is "likely,

9    as opposed to merely speculative, that the injury will be redressed by a favorable

10   decision" on the merits. *Lujan*, 504 U.S. at 561 (internal quotations omitted). An

11   injury is not redressable where the "only apparent avenue of redress for plaintiffs'

12   claimed injuries .... is unavailable." *Newdow v. Roberts*, 603 F.3d 1002, 1013 (D.C.

13   Cir. 2010). Any "injury" suffered by Plaintiff was caused by the issuance of the

14   Governor's Executive Order and the County's similar order. The major redress

15   Plaintiff sought – an exemption from the orders providing that signature gatherers

16   are "essential workers" could only have been obtained from these parties.

17       Further, as is discussed below, any order deeming signature gatherers

18   essential, or putting the initiative directly on the ballot, would not redress Plaintiff's

19   purported injury, in that the November 2020 election has already occurred. This or

20   any similar "avenue for redress" is simply "unavailable." *Newdow*, 603 F.3d at

21   1013.

22       **4.    Plaintiff's Claim is Moot**

23       Plaintiff also lacks standing to pursue the majority of the relief requested

24   because Plaintiff's claim is moot, and the relief requested would do nothing to

25   redress the injury purportedly suffered by Plaintiff.

26       The thrust of Plaintiff's suit is an attempt to place the food truck initiative on

27   the ballot for the November, 2020 election. (*See* Dkt. No. 18 at ¶¶ 40, 44.) This

28   election was held on November 3, 2020. RJN No. 5.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CA 92612

- 15 -    MOTION FOR JUDGMENT ON THE
                                                        PLEADINGS
                                                        Case No.: 8:20-cv-00767

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CA 92612

Any order finding that "initiative signature gatherers are essential workers" or "allow[ing] signature gatherers within the City of Colton" would not remedy Plaintiff's purported harm, and it is no longer possible to "[p]lace the initiative on the November 2020 ballot for the City of Colton." (Dkt. No. 18 at ¶¶ 40, 44.)

"Generally, a case is rendered moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Rubin v. City of Santa Monica,* 308 F.3d 1008, 1013 (9th Cir. 2002) (quoting *Schaefer v. Townsend*, 215 F.3d 1031, 1033 (9th Cir. 2000)).

The issues of whether signature gatherers are "essential," or whether the initiative must be placed on the November 2020 ballot are no longer live, and no party has a cognizable legal interest in the outcome of these issues.

Nor can Plaintiff make any argument that the "capable of repetition, yet evading review" exception to the doctrine of mootness applies. The COVID-19 pandemic and the State of California's response to it is and has been rapidly evolving. The State of California has already changed course and permits initiative signature gathering (see Dkt. No. 20-1 at ¶ 9–10 & Dkt No. 20-1 at pp. 11–15), and there is simply no likelihood that the same controversy would recur with respect to Plaintiff (even if he had standing). *See Yes on Prop B v. City and County of San Francisco*, 2020 WL 6158096, at *1 (9th Cir., Oct. 21, 2020) ("At best, Appellants have shown only that there is a theoretical possibility that the same controversy will recur with respect to them. (citation.) Accordingly, Appellants have not met the reasonable expectation requirement, and the 'capable of repetition yet evading review' exception does not apply.")

## C.   The First Count Under 42 U.S.C. § 1983 Fails

Plaintiff's first count under 42 U.S.C. section 1983 fails because the First Amended Complaint does not allege facts showing any constitutional violation by the City. Although the First Amended Complaint does not expressly disclose which constitutional right has allegedly been violated, Plaintiff's Motion for a Preliminary

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CA 92612

1   Injunction suggests that Plaintiff's claim is based on a purported violation of the

2   First Amendment to the United States Constitution. (*See* Dkt. No. 19 at pp. 10–19.)

3          Specifically, Plaintiff seems to allege that two sets of actions have violated

4   his First Amendment rights: application of generally applicable state election laws

5   governing the requirements for qualifying an initiative (Dkt.  No. 19 at pp. 10–18);

6   and the application of Executive Order N-33-20 to Plaintiff, and in particular the

7   earlier failure of this order to provide that signature gathers are "essential." (Dkt.

8   No. 19 at pp. 19–21.)

9          1.   **Plaintiff's Constitutional Challenge to the Executive Order**

10              **Fails to State a Claim**

11         To the extent Plaintiff intended to allege that interpreting the executive order

12  to exclude signature gatherers would render the executive order unconstitutional

13  and violative of his First Amendment rights, Plaintiff is wrong. The Supreme Court

14  has long recognized that "a community has the right to protect itself against an

15  epidemic of disease which threatens the safety of its members." *Jacobson v.*

16  *Massachusetts*, 197 U.S. 11, 27 (1905) (internal quotation marks omitted); *see also*

17  *In re Abbot*, 954 F.3d 772, 783–85 (5th Cir. 2020) (applying *Jacobson* in context of

18  COVID-19 pandemic to an executive order and holding "*Jacobson* remains good

19  law" and is "the controlling Supreme Court precedent that squarely governs judicial

20  review of rights-challenges to emergency public health measures."); *Altman v.*

21  *County of Santa Clara*, 2020 WL 2850291, at *7 (N.D. Cal., June 2, 2020)

22  ("Although Plaintiffs attempt to dismiss Jacobson as 'arcane constitutional

23  jurisprudence,' the case remains alive and well – including during the present

24  pandemic.") (citing *S. Bay United Pentecostal Church v. Newsom*, No. 19A1044,

25  590 U.S. --- 2020 WL 2813056 at *1 (May 29, 2020) (Roberts, C.J., concurring)).

26         In that regard, the Court has permitted states to enact "quarantine laws and

27  health laws of every description," *id.* at 25, similar to the Executive Order's

28  measures to combat the COVID-19 pandemic. *See, e.g.*, *Compagnie Francaise de*

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CA 92612

1  *Navigation a Vapeur v. Bd. of Health of State of La.*, 186 U.S. 380 (1902)

2  (upholding quarantine law against constitutional challenges); *see also Wendy Gish*

3  *v. Gavin Newsom*, 2020 WL 1979970, at *7 (C.D. Cal., Apr. 23, 2020 (Upholding

4  Executive Order No. N-33-20 against First Amendment based challenge).

5       The court's review of temporary legislative action to protect public health is

6  limited to whether the challenged action has "real or substantial relation to those

7  objects, or is, beyond all question, a plain, palpable invasion of rights secured by

8  the fundamental law." *Jacobson*, 197 U.S. at 31; *see also id.* at 29 ("reasonable

9  regulations" may be implemented in the face of an infectious disease epidemic);

10  *Abbott*, 954 F.3d at 786–789 (applying a deferential, rational-basis standard to an

11  executive order restricting otherwise constitutionally protected abortion access in

12  the face of the COVID-19 crisis). This deferential standard recognizes that, in a

13  public health crisis, "it is no part of the function of a court . . . to determine which

14  one of two modes was likely to be the most effective for the protection of the public

15  against disease." *Jacobson*, 197 U.S. at 30; *see also S. Bay United Pentecostal*

16  *Church,* 2020 WL 2813056 at *1 ("Our Constitution principally entrusts the safety

17  and the health of the people to the politically accountable officials of the States to

18  guard and protect. When those officials undertake to act in areas fraught with

19  medical and scientific uncertainties, their latitude must be especially broad. Where

20  those broad limits are not exceeded, they should not be subject to second-guessing

21  by an "unelected federal judiciary," which lacks the background, competence, and

22  expertise to assess public health and is not accountable to the people") (mem.)

23  (Roberts, C.J., concurring in denial of injunctive relief) (internal citations omitted).

24       As this Court previously concluded, the physical distancing requirements

25  bear a reasonable and substantial relationship to preventing the spread of COVID-

26  19 (Dkt. No. 16 at p. 7), and Plaintiff has made no attempt to show why this is not

27  the case.

28

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CA 92612

2.    **Plaintiff's Statutory Challenge to the Executive Order Fails to State a Claim**

To the extent Plaintiff intended to allege that the City misinterpreted Executive Order N-33-20 and signature gatherers qualify as "election personnel," Plaintiff similarly fails to state a claim.

"Elections personnel" are identified in the relevant order as workers essential to ensure the continued operation of the sector "Community-Based *Government Operations* and Essential Functions." Dkt. No. 18-7 at p. 10 (emphasis added). The best reading of the term "elections personnel" in the context of workers necessary to support the sector "Community-Based *Government Operations*" is to interpret "elections personnel" as "*government* personnel responsible for conducting scheduled elections as part of their job (i.e., City Clerks and County Elections Officials)." Dkt. No. 18-6 at p. 2.

Interpreting the term otherwise would have been contrary to the intent of the executive order – to minimize gatherings and in-person contact to the maximum extent possible while allowing continued operation of critical sectors. Signature gatherers are an ideal vector for transmission of COVID-19, going repeatedly door to door and interacting with the broadest possible cross-section of a community.

The California Elections Code itself shows that "elections personnel" does not include signature gatherers. An "[e]lections official" is defined as "(a) A clerk or any person who is charged with the duty of conducting an election. (b) A county clerk, city clerk, registrar of voters, or elections supervisor having jurisdiction over elections within any county, city, or district within the state." Cal. Elections Code § 320. While elections personnel could arguably be interpreted slightly more broadly then elections official, the common thread is the word "election." The definition of an "election official" is tied to individuals who are involved with the actual running or operation of an *election*, not some preparatory aspect of an election such as qualifying an initiative.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CA 92612

1   To the extent Plaintiff still seeks a declaration that signature gatherers are

2   exempt from the Governor's Executive Order, this issue is now moot (in addition to

3   the fact that the election has already occurred). Since June 5, 2020, the State has

4   expressly allowed "the collection of signature to qualify candidates or measures for

5   the ballot." (Dkt. No. 20-1 at ¶ 9–10; Dkt No. 20-1 at pp. 11–15.)

6           3.   **Plaintiff's Challenge to California Election Law Fails to**

7                **State a Claim**

8   While not expressly pled in Plaintiff's operative First Amended Complaint,

9   Plaintiff appears to challenge various aspects of California election law. In

10  connection with Plaintiff's motion for a preliminary injunction, Plaintiff seemed to

11  contend that, in the aggregate, Executive Order N-33-20 and the elections

12  requirements (e.g., the requirement for "wet" signatures, the number of signatures

13  needed, and the deadline to submit signatures, *see* Dkt. No. 19 at 13:16–14:7)

14  imposed a severe burden on Plaintiff's constitutional rights and fail to survive either

15  "exacting scrutiny" or "strict scrutiny." Plaintiff is incorrect.

16  Two recent decisions discuss in detail the test that applies in the Ninth

17  Circuit when a plaintiff challenges initiative related restrictions, *Fight for Nevada v.*

18  *Cegavaske,* 2020 WL 2614624 (D. Nev., May 15, 2020) ("*Fight for Nevada*") and

19  *Arizonans for Fair Elections v. Hobbs,* 2020 WL 1905747 (D. Ariz., Apr. 17, 2020)

20  ("*Hobbs*").

21  In *Fight for Nevada*, a registered committee for the recall of a public officer

22  sought a temporary restraining order to enjoin the Nevada Secretary of State from

23  enforcing the statutory deadline for submission of recall signatures in light of the

24  COVID-19 pandemic and related "stay at home" emergency directives. *Fight for*

25  *Nevada*, 2020 WL 2614624 at *1–2. The plaintiff in *Fight for Nevada*, like Plaintiff

26  here, sought an order "extend[ing] the deadline by which Plaintiff must submit its

27  petition by the number of days that [the] emergency directives are in effect." *Id.* at

28  *3. While doubting whether it could "ever have the authority to order the Secretary

to extend the deadline in a specific case," the court nonetheless examined the merits of the plaintiffs' constitutional claim. *Id*.

In examining the merits, the court first concluded that the "*Anderson-Burdick*" framework[2] did not apply, because a recall petition was not analogous to a ballot-access claim (which is the context in which *Anderson-Burdick* applies). *Id.* at *4. Under the *Anderson-Burdick* framework, the court weighs the character and magnitude of the asserted injury to the plaintiff's First and Fourteenth Amendment rights against the interests put forward by the State as justifications for the burden imposed by the rule, while taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights. *Arizona Libertarian Party v. Hobbs*, 925 F.3d 1085, 1090 (9th Cir. 2019).

The *Fight for Nevada* court, however, noted that the Ninth Circuit analyzes challenges to initiative qualification restrictions under a different test, and that an effort to qualify a recall petition was similar to an effort to qualify an initiative:

> The Ninth Circuit has also never recognized a First Amendment right to place an initiative on the ballot, which is perhaps more analogous to Plaintiff's quest to trigger a recall election than candidate access to a primary or general election ballot. *Angle v. Miller*, 673 F.3d 1122, 1133 (9th Cir. 2012) . . . . The Court will therefore examine Plaintiff's claim under *Angle*.

*Fight for Nevada*, 2020 WL 2614624 at *5.

Under *Angle v. Miller*, 673 F.3d 1122 (9th Cir. 2012)*,* "ballot access restrictions place a severe burden on core political speech and trigger strict scrutiny when they significantly inhibit the ability of initiative proponents to place initiatives on the ballot." *Id.* To show that a restriction "significantly inhibit[s]" such an ability, a plaintiff must provide "well-substantiated evidence" that "despite reasonably diligent efforts, they and other initiative proponents had been unable to

_____

[2] *Anderson v. Celebrezze,* 460 U.S. 780 (1983); *Burdick v. Takushi*, 504 U.S. 428 (1992).

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CA 92612

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CA 92612

qualify initiatives for the ballot as a result of the [restrictions]." *Id.* at *5; see also Dkt. No. 36 at p. 8 (concluding *Angle v. Miller* test applied to Plaintiff's challenge).

In concluding that the *Fight for Nevada* plaintiffs had not met their burden, the court analyzed in detail the number of signatures that had been obtained before the stay-at-home order and the amount of signatures still to be gathered:

> [T]he first stay-at-home order did not go into effect until March 30, 2020, which coincidentally was also the mid-point for Plaintiff's petition. At that point, Plaintiff had gathered just 15,892 signatures— far below the 243,995 required signatures. That Plaintiff was already so far from its goal by March 30, 2020 gives less credence to the argument that the emergency directives, as opposed to other reasons, such as a lack of diligence, prevented Plaintiff from acquiring the requisite signatures. Plaintiff has not argued or established that the deadline itself could never be satisfied and is therefore facially unconstitutional. . . .
>
> [T]he Court cannot conclude that Plaintiff has demonstrated that it and other reasonably diligent recall petition circulators are severely burdened by NRS 306.015 and [the] emergency directives.

*Id.* at *6. Here, Plaintiff has failed to allege any facts showing that despite reasonably diligent efforts, he and other initiative proponents had been unable to qualify initiatives for the ballot as a result of Executive Order N-33-20 or other California elections laws. Plaintiff declined to disclose in his First Amended Complaint how many signatures have been gathered and how many remain, or to allege any other facts to show that a diligent proponent would be severely burdened. (*See* Dkt. No. 16 at p. 9; see also Dkt. No. 26 at p. 8 ("Plaintiff's showing of reasonable diligence is woefully inadequate and ultimately fatal to his efforts to establish a severe burden.").)

In *Hobbs*, a pair of ballot measure committees challenged various provision of Arizona's initiative laws in light of the COVID-19 pandemic. *Hobbs,* 2020 WL 1905747 at *1–2. In particular, the committee sought an injunction requiring the

Arizona Secretary of State to accept electronic signatures. *Id.* at *2. While noting that the application could have been properly denied on standing grounds, the court nonetheless reached the merits of the request for a TRO. *Id.* at *4–6.

The *Hobbs* court also declined to apply the *Anderson-Burdick* framework, despite noting the parties seemed to agree that it was the relevant test. *Id.* at *7. The *Hobbs* court noted that the signature gathering process raised issues distinct from ballot access questions, and concluded that the two most applicable Ninth Circuit decisions are *Prete v. Bradbury*, 438 F.3d 949 (9th Cir. 2006) and *Angle*.

Distilling these cases, the *Hobbs* court concluded that under *Prete* and *Angle*, a plaintiff bears the burden of showing that the challenged requirements impose a "severe burden" on their rights. If Plaintiffs can demonstrate such a burden, strict scrutiny applies. If not, a relaxed degree of scrutiny applies. *Id*. at *8.

Like in *Fight for Nevada,* the court analyzed in detail the number of signatures that had been obtained versus those that remained to be obtained. One of the Plaintiffs in *Hobbs* had already obtained more than the minimum number of signatures to qualify for the ballot (273,786 out of a required 237,645 signatures), but presented evidence that the number of acceptable signatures was likely still below the requisite number in light of defective or deficient signatures. *Id.* at *9.

Despite the substantial number of signatures already obtained by one of the two plaintiffs, the court *still* concluded that the plaintiff had not shown sufficient diligence to compel a finding that the challenged restrictions imposed a severe burden, and noted that another committee had been able to obtain around 300,000 signatures by the time of the pandemic outbreak. *Id.* at *10. As the court concluded:

> As noted, "the burden on plaintiffs' rights should be measured by whether, in light of the entire statutory scheme regulating ballot access, 'reasonably diligent' initiative proponents can gain a place for their proposed initiative on the ballot." (citation). The party challenging the regulation bears the burden of establishing severity. (citation) "Speculation, without supporting evidence," is insufficient to demonstrate that the statutory scheme results in a severe burden.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CA 92612

> Here, a "reasonably diligent" committee could have placed its initiative on the November 2020 ballot despite the Title 19 requirements and the COVID-19 outbreak. . . .

*Id.* at *11. The court clarified that its analysis "should not be interpreted as a criticism of Plaintiffs [because] [t]hey are hardly the only members of our community who failed to anticipate and plan for a once-in-a-century pandemic" but "the relief they are seeking in this case is profound—the displacement of a bedrock component of Arizona law." *Id.* As the court concluded, "[s]uch laws should not be wantonly overturned, and that is why courts (including the Ninth Circuit) require parties raising constitutional challenges to state ballot access laws to show not only that they have been thwarted by the law, but that a reasonably diligent party would have been thwarted, too." *Id.* Here, Plaintiff has presented far less evidence than the evidence the *Hobbs* court concluded was insufficient to show a severe burden.

Because the plaintiffs there (like Plaintiff here) had not shown a severe burden, the court had little difficulty in concluding that the challenged restrictions further an "important regulatory interest." *Id.* at *13.

As the *Hobbs* court noted, "[t]he Supreme Court has recognized that Arizona (like other states) 'indisputably has a compelling interest in preserving the integrity of its election process. Confidence in the integrity of our electoral processes is essential to the function of our participatory democracy.'" *Id.* at *13 (quoting *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006)). The court noted that the requirements were "clearly aimed at maintaining the integrity of the initiative process." *Id.*

Here, too, the challenged restrictions are supported by important regulatory interests. The Executive Order itself is designed to slow the spread of COVID-19. The signature-related requirements serve to prevent fraud, ensure that the required signatures come from qualified electors, and that the initiative has sufficient support. *See Timmons v. Twin Cities Area New Party,* 520 U.S. 351, 364 (1997)

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CA 92612

("States certainly have an interest in protecting the integrity, fairness, and efficiency of their ballots and election processes . . . ."); *Angle*, 673 F.3d at 1135 ("Nevada undeniably has an important regulatory interest in making sure that an initiative has sufficient grass roots support to be placed on the ballot.") (internal quotations omitted); *Costa v. Superior Court*, 37 Cal.4th 986, 1012 (2006) ("[A]ll of our past cases emphasize the utmost importance of ensuring the integrity of the electoral process and of interpreting and applying the applicable constitutional and statutory provisions in a manner that closely safeguards the integrity of that process.").

### D.   Plaintiff's Second Count for Declaratory Relief Fails

If the Court reaches the issue, Plaintiff's second count for declaratory relief also fails to state a claim against the City upon which relief can be granted. Declaratory relief is available only "[i]n a case of actual controversy." 28 U.S.C. § 2201. An "actual controversy" exists when there is a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). The actual controversy requirement for declaratory relief "is identical to Article III's constitutional case or controversy requirement." *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994).

Here, Plaintiff seeks a declaration that "elections personnel" and "essential workers" referred to in the State Orders includes initiative signature gatherers. (Dkt No. 18 at ¶ 40.) However, the First Amended Complaint alleges no actual, live controversy between Plaintiff and the City. First, as explained above, the Article III "case or controversy" requirement is not met due to Plaintiff's lack of standing. Second, Plaintiff has failed to allege in anything other than conclusory terms that any "substantial controversy" currently exists between him and the City regarding the definition of "elections personnel," in particular since as of June 5, 2020, the State has expressly allowed "the collection of signatures to qualify candidates or measures for the ballot." (Dkt. No. 20-1 at ¶ 9–10 & Dkt No. 20-1 at pp. 11–15.)

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CA 92612

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CA 92612

1    Further, any controversy that could have existed between the City and Plaintiff

2    related to the definition of "essential workers" is moot, because the November

3    2020 election has occurred. RJN No. 5.

4    Since Plaintiff has alleged no "actual controversy" between Plaintiff and the

5    City regarding the definition of "elections personnel," Plaintiff has failed to state a

6    claim for declaratory relief against the City.

7    **E.     Plaintiff's Petition for Writ of Mandate Fails to State a Claim**

8    Finally, Plaintiff's third count for "writ of mandate" fails to state a claim on

9    which relief can be granted.

10   Under California Code of Civil Procedure section 1085(a), a writ of mandate

11   may be issued "by any court to any inferior tribunal, corporation, board, or person."

12   Cal. Code Civ. Proc., § 1085, subd. (a). The writ may issue "to compel the

13   performance of an act which the law specially enjoins, as a duty resulting from an

14   office, trust, or station." *Id.* A petitioner must meet three requirements to obtain writ

15   relief: (1) no "plain, speedy, and adequate" alternative remedy exists; (2) "a clear,

16   present, . . . ministerial duty on the part of the respondent"; and (3) a "clear,

17   present, and beneficial right in the petitioner to the performance of that duty."

18   *People v. Picklesimer*, 48 Cal.4th 330, 340 (2010) (quoting Cal. Code Civ. Proc. §

19   1086 and *Santa Clara County Counsel Attys. Assn. v. Woodside*, 7 Cal.4th 525,

20   539-540 (1994).)

21   Plaintiff fails to allege facts that could satisfy these elements. First, Plaintiff

22   fails to adequately allege any clear, present, and ministerial duty on the part of the

23   City. Plaintiff has identified no statute or other source of authority that creates a

24   ministerial duty on the part of the City to take the actions described in paragraph 44

25   of the First Amended Complaint. The United States Constitution does not require

26   these or any other actions to remedy the alleged constitutional violations, because

27   (among other reasons) Plaintiff's constitutional rights were not violated for the

28   reasons described in section C, above.

MOTION FOR JUDGMENT ON THE
PLEADINGS
Case No.: 8:20-cv-00767

1  Finally, Plaintiff is not beneficially interested in the issuance of a writ

2  commanding the actions described in paragraph 44 of the First Amended

3  Complaint, because the requests are moot and impossible. The November 2020

4  election has already occurred, and the City *cannot* "place the initiative on the

5  November 2020 ballot for the City of Colton," "perform any other necessary act to

6  allow for signature gathering or the initiative to be placed on the 2020 ballot," or

7  take any other action related to an election that has already occurred. (Dkt. No. 18

8  at ¶ 40.)

9  **IV.   CONCLUSION**

10  For all of the aforementioned reasons, the City requests that all of Plaintiff's

11  claims against the City be dismissed, without leave to amend.

12

13  Dated:   January 20, 2021          BEST BEST & KRIEGER LLP

14

15                                     By:   */s/ Jeffrey V. Dunn*

16                                         JEFFREY V. DUNN
                                           CARLOS L. CAMPOS

17                                         DANIEL L. RICHARDS
                                           Attorneys for Defendant City of

18                                         Colton

19

20

21

22

23

24

25

26

27

28

MOTION FOR JUDGMENT ON THE
PLEADINGS
Case No.: 8:20-cv-00767

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CA 92612